UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **JEREMY DEWAYNE FOSTER** | **CIVIL ACTION NO. 24-0401** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **LONNIE NEIL, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Jeremy Dewayne Foster, a prisoner at David Wade Correctional Center ("DWCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately March 20, 2024, under 42 U.S.C. § 1983. He names the following Defendants: Warden Lonnie Neil, Colonel Roderick Malcolm, Kristen Harper, Sergeant Curtis Harper, Sergeant Stanley, Lieutenant Grier,[1] and Sergeant Mack.[2]

For reasons that follow, the Court should retain Plaintiff's federal and state law claims concerning the destruction of his property against Lieutenant Grier, Sergeant Stanley, Sergeant Mack, and Sergeant Curtis Harper in their individual capacities. The Court should dismiss Plaintiff's remaining claims, including his requests to prosecute Defendants and terminate their employment.

---

[1] In an amended pleading, Plaintiff states that Sergeant Grier "is now Lt. Grier." [doc. # 10-1, p. 2].

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

**Background**

Plaintiff was transferred to DWCC on December 4, 2023. [doc. # 1, p. 3]. He claims that the same day, "for no reason" or "for an unknown offense," Warden Lonnie Neil, Colonel Roderick Malcolm, and Kristen Harper maliciously assigned him to the "cell blocks" in "level 1 maximum custody." [doc. # 1, pp. 3-4]. On December 4, 2023, following an "administrative review board," Warden Neil "gave [Plaintiff] 60 days [in] preventative level 1 maximum custody[.]" [doc. #s 1, p. 4; 10-1, p. 1]. Plaintiff describes "preventative level 1 maximum custody" as follows:

> [Y]ou are in the cell by yourself. You only have your legal work. You can only have a Flex Pen which is a little longer than your middle finger; 1 pair of shoes; 1 pair of shower slippers; 3 books; 10 pictures; only hygiene is a stick of deodorant; a short toothbrush which the bristles fall in your mouth after two good brushes; 3 shirts; 3 boxers; 3 socks. You only leave the cell to shower for 10 minutes. You have your recreation in a box in fence outside if it's not raining and you go everywhere in chains including the shower; once you make it to the shower they uncuff you. The body parts that are cuffed are your wrist and ankles. When you go on a callout the body parts that are cuffed is wrist double locked a chain around your waistline connected to the double lock of your wrist and leg shackles. [sic].

[doc. # 10, p. 5].

On January 30, 2024, following a "segregation review board," Colonel Malcolm and Kristen Harper "gave [Plaintiff] preventative Seg. Level 2[.]" [doc. #s 1, p. 4; 1-2, p. 6]. Plaintiff describes "preventative Seg. Level 2" thusly: "[A]ll the same except that you can order 30 dollars canteen and you can order certain clothes off of Prison Enterprise and you go to the shower with no restraint. [sic]." [doc. # 10, p. 5]. Plaintiff states that in both Level 1 and 2: "You have to strip naked to go outside in the cage and the law library guy comes down the tier once a week. [sic]." *Id.*

As of approximately April 21, 2024, Plaintiff remained in the cell blocks. [doc. #s 1, pp. 3-4; 5, p. 3; 10, p. 6]. He suggests, however, that as of April 3, 2024, he was in an even less restricted custody level, writing that he can now walk to the dining hall, use a real pen, be free from restraint, go outside and play basketball or look at the sky, shake another inmate's hand, watch television, and use a telephone more than once each week. [doc. #s 10, p. 6; 10-1, p. 5]. That said, "the law library guy still comes once a week," Plaintiff can "still only shave once a week," and he is "still in a cell." *Id.*

Plaintiff claims that on December 5, 2023, Lieutenant Grier and Sergeants Curtis Harper, Stanley, and Mack maliciously and deceptively destroyed his property, which he ordered from Prison Enterprise. [doc. #s 1, pp. 3-4, 7; 1-2, pp. 2-4; 10-1, p. 2]. He was able to send some property home; however, he suggests this did not ameliorate any deprivation because he is unable to use the property at his home, and he cannot send his property back to the facility. [doc. #s 5, p. 4; 10, p. 4]. He was able to retain 10 pictures, 7 books, 3 boxers, 3 shirts, 3 pairs of socks, and legal work. [doc. # 10-1, p. 2]. Plaintiff maintains that "all prisoners" in the Department of Corrections order from Prison Enterprise. *Id.* at 4. In an amended pleading, he "contends that David Wade had a policy of destroy[ing] inmates' property and mak[ing] them send it home." [doc. # 10, p. 6]. He did not have an opportunity to challenge the deprivation of his property or the policy before defendants destroyed his property. [doc. # 15, pp. 1-2].

Plaintiff seeks declaratory relief, compensatory damages, the termination of officers' employment, and the imprisonment of officers. [doc. #s 1, p. 8; 5, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a

prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by

5

the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Administrative Segregation**

"'Inmates have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). "'[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (quoting *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."). "In other words, segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).[4]

---

[4] "Extraordinary circumstances" and "without more" are simply "alternative statements of the *Sandin* test: administrative segregation 'without more' or 'absent extraordinary circumstances' is administrative segregation that is merely incident to ordinary prison life, and is not an 'atypical and significant hardship' under *Sandin*." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

The Court must examine whether Plaintiff's punishment constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life, such that a liberty interest in avoiding the deprivation arises." *Wilkerson v. Goodwin*, 774 F.3d 845, 852-53 (5th Cir. 2014) (internal quotation marks and quoted source omitted). "In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and [*Wilkinson*] considered the *nature* of the more-restrictive confinement and its *duration* in relation to prison norms and to the terms of the individual's sentence." *Id.* (emphasis added). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (cited with approval by *Wilkerson*, 774 F.3d at 854).

"In essence, courts employ a sliding scale, taking into account how bad the conditions are and how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.* Courts "consider the severity of the restrictive conditions and their duration when deciding whether a prisoner has a liberty interest in his custodial classification." *Carmouche v. Hooper*, 2023 WL 5116377, at *2 (5th Cir. Aug. 10, 2023).

Here, Plaintiff first claims that on December 4, 2023, "for no reason" or "for an unknown offense," Warden Lonnie Neil, Colonel Roderick Malcolm, and Kristen Harper maliciously assigned him to the "cell blocks" in "level 1 maximum custody." [doc. # 1, pp. 3-4]. The same day, following an "administrative review board," Warden Neil "gave [Plaintiff] 60 days [in]

7

preventative level 1 maximum custody[.]" [doc. #s 1, p. 4; 10-1, p. 1]. Plaintiff describes "preventative level 1 maximum custody" as follows:

> [Y]ou are in the cell by yourself. You only have your legal work. You can only have a Flex Pen which is a little longer than your middle finger; 1 pair of shoes; 1 pair of shower slippers; 3 books; 10 pictures; only hygiene is a stick of deodorant; a short toothbrush which the bristles fall in your mouth after two good brushes; 3 shirts; 3 boxers; 3 socks. You only leave the cell to shower for 10 minutes. You have your recreation in a box in fence outside if it's not raining and you go everywhere in chains including the shower; once you make it to the shower they uncuff you. The body parts that are cuffed are your wrist and ankles. When you go on a callout the body parts that are cuffed is wrist double locked a chain around your waistline connected to the double lock of your wrist and leg shackles. [sic].

[doc. # 10, p. 5].

Plaintiff, however, suggests that he *did* receive procedural due process, alleging that he went before review boards prior to his assignment to "preventative level 1 maximum custody" and "preventative Seg. Level 2." In this respect, he does not state a claim for denial of procedural due process. *See Bradley v. Hammonds*, 159 F.3d 1357 (5th Cir. 1998) ("All that is required for the administrative segregation of prisoners pending a disciplinary hearing is 'an informal, nonadversary evidentiary review' taking the form of oral or written notice of the charges to the inmate, with some opportunity for the prisoner to present his views. Nowhere does Bradley claim that he failed to receive this minimal review.").

Even assuming, however, that Plaintiff did not receive procedural due process, his approximately 57 days in 'preventative level 1 maximum custody,' combined with the conditions and restrictions he experienced there, did not plausibly amount to 'atypical and significant hardships' in relation to the ordinary incidents of prison life. *Compare LaVergne v. Stutes*, 82 F.4th 433 (5th Cir. 2023) (prisoner's nearly five years in solitary confinement were not sufficiently severe to violate his due process rights, even though the prisoner alleged he was

confined to a cell 23 hours per day, but was permitted two contact visits per month, was able to make phone calls, cook food, or exercise an hour per day, was permitted outdoor recreation for three hours per week, albeit in a limited space, and was not deprived of conversation or communication with other inmates); *with Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (finding the following sufficiently severe: a "supermax facility" where placement was indefinite, almost all contact was prohibited, and placement disqualified the prisoner for parole consideration); *and Wilkerson*, 774 F.3d at 855 (thirty-nine-year confinement in solitary confinement); *and Bailey*, 647 F. App'x at 474-75 (prisoner kept twenty-three to twenty-four hours per day in a cell with solid steel door and minimum visitation).[5]

Next, Plaintiff claims that on January 30, 2024, following a "segregation review board," Colonel Malcolm and Kristen Harper "gave [him] preventative Seg. Level 2[.]" [doc. #s 1, p. 4; 1-2, p. 6]. Plaintiff describes "preventative Seg. Level 2" thusly: "[A]ll the same except that you

---

[5] *See Toson v. Taylor*, 2023 WL 8271965, at *1 (5th Cir. Nov. 30, 2023) ("[T]he loss of various inmate privileges and a negative adjustment in his custodial status—did not plausibly impose 'atypical and significant hardship' on him."); *Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding no claim where the prisoner "received 30 days' cell and commissary restriction (including loss of recreation and library privileges, as well as the ability to attend religious services), 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction from trustee class 4 to line class 1, and an increase of his custody level from minimum to medium."); *Spellmon v. Price*, 100 F.3d 953 (5th Cir. 1996) (finding that the following did not implicate a liberty interest sufficient to invoke due process protections: "restrictions on recreation, commissary and day room privileges, and a change in custodial status which resulted in his being confined for approximately six weeks in a section of the prison then on lockdown."); *Antone v. Preschel*, 347 F. App'x 45, 46 (5th Cir. 2009) ("Antone failed to state a claim with respect to his punishment of 45 days of cell and recreation restrictions and a reduction in classification status from 'S3' to 'Line I'[.]"); *Lewis v. Landis*, 738 F. App'x 286, 287 (5th Cir. 2018) (45 days of cell, commissary, and recreation restrictions, as well as a change in line classification did not implicate due process concerns); *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017); *Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *3 (5th Cir. Feb. 20, 2020); *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 324 (5th Cir. 2021).

9

can order 30 dollars canteen and you can order certain clothes off of Prison Enterprise and you go to the shower with no restraint. [sic]." [doc. # 10, p. 5]. Plaintiff states that in both Level 1 and 2: "You have to strip naked to go outside in the cage and the law library guy comes down the tier once a week. [sic]." *Id.*

Plaintiff, however, does not plead a plausible claim. If his 57 days in 'preventative level 1 maximum custody' did not reflect atypical and significant hardships in relation to the ordinary incidents of prison life, then, *a fortiori*, his 64 days in improved conditions did not either. The same result obtains with respect to Plaintiff's time in the even less restricted custody level, where he can now walk to the dining hall, use a real pen, be free from restraint, go outside and play basketball or look at the sky, shake another inmate's hand, watch television, and use a telephone more than once each week.

Plaintiff does not present extraordinary circumstances or allege atypical or significant hardships. He does not, therefore, state a plausible procedural due process claim.

Accordingly, the Court should dismiss these claims against Warden Lonnie Neil, Colonel Roderick Malcolm, and Kristen Harper.

**3. Destroyed Property**

The Court should retain Plaintiff claims that on December 5, 2023, Defendants Stanley, Grier, Mack, and Curtis Harper, in their individual capacities, maliciously and deceptively destroyed his property without first affording him procedural due process. [doc. #s 1, pp. 3-4, 7; 1-2, pp. 2-4; 10-1, p. 2].

Plaintiff maintains that "all prisoners" in the Department of Corrections order from Prison Enterprise. *Id.* at 4. In an amended pleading, he "contends that David Wade had a policy of destroy[ing] inmates' property and mak[ing] them send it home." [doc. # 10, p. 6]. He did

10

not have an opportunity to challenge the deprivation of his property or the policy before defendants destroyed his property. [doc. # 15, pp. 1-2]. From what the undersigned can glean, Plaintiff appears to challenge the facility's former policy of not storing property that inmates were prohibited from possessing in administrative segregation; he suggests that officials would destroy inmates' property if the inmates were unable to mail it elsewhere. He suggests that the facility has storage units which officials could use to store inmates' property while the inmates are "locked up." [doc. # 10, p. 6].

Of note, the *Parratt/Hudson* doctrine[6] does not, following the undersigned's initial review, bar Plaintiff's claims. A post-deprivation tort cause of action in state law is, under the *Parratt/Hudson* doctrine, sufficient to satisfy the requirements of due process when a plaintiff alleges that he has been deprived of his property, without due process of law, by the negligent or intentional actions of a state officer that are "random and unauthorized."[7] *Sheppard v. Louisiana Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989) (quoting *Hudson*, 468 U.S. at 533-35). Here, however, Plaintiff alleges that an official policy authorized these defendants to deprive him of his property. *See Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) ("Because the undisputed facts reveal that Allen's word processor and radio were confiscated under the authority of a prison administrative directive, the confiscation was not a random, unauthorized act by a state employee.").

---

[6] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986).

[7] "The doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)." *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

11

Finally, while Plaintiff does not identify conversion as a specific cause of action, he plausibly pleads a conversion claim under Louisiana law. The Court should retain this state law claim under its supplemental jurisdiction.[8]

**4. Official Capacities of Grier, Stanley, Mack, and Curtis Harper**

Plaintiff names Defendants Grier, Stanley, Mack, and Curtis Harper in their official capacities. [doc. # 1, p. 3].

Plaintiff, however, does not allege that any of these defendants made policy. If a defendant is not a policymaker, the defendant is "not the proper defendant for an official capacity claim . . . ." *Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006) ("An assistant district attorney, therefore, is not a policymaker and not the proper defendant for an official capacity claim against the District Attorney's Office."); *see Kelley v. City of Wake Vill., Texas*, 264 F. App'x 437, 442 (5th Cir. 2008) ("Because no evidence has been presented that Officer Crawford was, at any time relevant to this proceeding, a policymaker in the WVPD, we affirm the district court's dismissal of the claim against him in his official capacity."). Accordingly, the Court should dismiss Plaintiff's official capacity claims against these defendants.[9]

---

[8] *See generally Fuller v. XTO Energy, Inc.*, 989 So. 2d 298, 302 (La. App. 2 Cir. 8/13/08), *writ denied,* 2008-2227 (La. 11/21/08) ("[A] conversion consists of an act in derogation of a plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.").

[9] To be sure, "the specific identity of the policymaker is a legal question that need not be pled . . . " *Groden v. City of Dallas, Texas*, 826 F.3d 280, 284 (5th Cir. 2016). However, the undersigned does not recommend dismissing Plaintiff's official capacity claims *because* Plaintiff fails to plead the identity of a policymaker; rather, the undersigned recommends dismissal because Plaintiff does not allege or even suggest that any of these defendants made policy.

**5. Terminating Defendants' Employment**

Plaintiff asks the Court to terminate Defendants' employment. The Court lacks authority to grant this request.

Federal courts are not prison managers or personnel directors. *See Hurrey v. Unknown TDCJ Corr. Officer A*, 2009 WL 3645638, at *2 (N.D. Tex. Nov. 4, 2009). Courts "will not interfere in the administration of prisons absent an abuse of the wide discretion allowed prison officials in maintaining order and discipline." *Royal v. Clark*, 447 F.2d 501, 501-02 (5th Cir. 1971). The Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." *Shaw v. Murphy*, 532 U.S. 223, 230 (2001); *see Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Smith v. Sullivan*, 611 F.2d 1039, 1044 (5th Cir. 1980).

Moreover, Plaintiff's request sounds in mandamus as he essentially asks the Court to, by writ, compel the non-federal official (or entity) with the authority to terminate defendants' employment to perform his, her, or its duties. In this respect, the Court lacks jurisdiction.[10] *See Samuels v. Emanuel*, 2014 WL 50851, at *2 (W.D. La. Jan. 7, 2014) (reasoning, where the plaintiff asked "that the defendants be relieved from their duties[,]" that "federal district court lacks jurisdiction to review actions in the nature of mandamus, seeking to compel state officials to perform duties allegedly owed the plaintiff, as for example in this case . . . .").

The Court should deny Plaintiff's requested relief.

---

[10] "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee *of the United States* or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added).

**6. Prosecuting Defendants**

Plaintiff asks this Court to imprison Defendants.

There is no constitutional right to have a person criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).[11] Investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government. In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys. In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys. *See* LA. CODE. CRIM. PROC. arts. 61 and 62.

Plaintiff should direct his concerns to a local, state, or federal law enforcement agency. He should be aware that if a prosecuting authority investigates and chooses not to file charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281. The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); *see, e.g., Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

The Court should deny Plaintiff's requested relief.

---

[11] *See U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

**Recommendation**

For the reasons above, **IT IS RECOMMENDED** that the following be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted: Plaintiff Jeremy Dewayne Foster's claims against Warden Lonnie Neil, Colonel Roderick Malcolm, and Kristen Harper; his official capacity claims against Lieutenant Grier, Sergeant Stanley, Sergeant Mack, and Sergeant Curtis Harper; and his requests to prosecute defendants and terminate their employment.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 10th day of June, 2024.

Kayla Dye McClusky
United States Magistrate Judge